427 A.2d 166

**COMMONWEALTH of Pennsylvania,**

v.

**James Edgar CRAWFORD, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed March 6, 1981.

Petition for Allowance of Appeal Denied July 10, 1981.

Joseph N. Bifano, West Mifflin, for appellant.

Jess D. Costa, District Attorney, Washington, for Commonwealth, appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

Appellant, James Edgar Crawford, was found guilty by a jury of theft by unlawful taking [1] on July 13, 1977. On July 18, 1977, appellant pled guilty to an indictment charging him with recklessly endangering another person.[2] Thereafter, appellant was sentenced to concurrent prison terms on both

1. 18 Pa.C.S.A. § 3921.

2. 18 Pa.C.S.A. § 2705.

the reckless endangerment charge and the prior theft conviction. This appeal from the judgments of sentence followed.[3]

 ■ Appellant alleges three instances of reversible error in the trial proceeding and the presence of after-discovered evidence as basis for this court to allow the withdrawal of his guilty plea.[4] Finding no merit to any of these contentions, we affirm the order of sentence dated July 18, 1977.

Appellant's first assignment of error is that the evidence was insufficient to sustain the jury's finding that he was guilty of theft and, therefore, that the judgment should be arrested. In reviewing the sufficiency of the evidence, we must consider the entire record and all inferences properly deducible therefrom in the light most favorable to the Commonwealth. *Commonwealth v. Horton*, 485 Pa. 115, 401 A.2d 320 (1979). Applying this reasoning, the pertinent facts are as follows.

**3.** Before appealing to this court on August 16, 1977, appellant failed to file post-verdict motions within ten days of the guilty verdict although the record reveals that he was informed of the requirement to do so by the court below. *See* Pa.R.Crim.P. 1123. However, on October 3, 1977, appellant obtained leave to file post-verdict motions *nunc pro tunc* and, on October 12, 1977, appellant filed motions in arrest of judgment and for a new trial. By per curiam order, the court en banc denied these motions on November 18, 1977. On January 4, 1979, the Commonwealth filed a motion to quash the instant appeal on the ground that appellant had improperly perfected an appeal to this court from the order of sentencing dated July 18, 1977, rather than from the per curiam order of the court en banc. This court denied the Commonwealth's motion to quash on January 17, 1979. Thereafter, the Commonwealth filed a petition to reconsider the motion to quash which appellant rejoined by filing a motion to merge the order dated November 18, 1977 with the appeal of the order of July 18, 1977. We denied the Commonwealth's petition for reconsideration and deferred ruling on the motion to merge until the time of argument and decision of the case when, by per curiam order, it was granted.

**4.** We note that separate appeals should be taken when more than one judgment of sentence is appealed from. Since an objection was not raised to appellant's single appeal, however, we will entertain it as filed. *Commonwealth v. Bunch*, 466 Pa. 22, 26 n. 1, 351 A.2d 284, 285 n. 1 (1976), *citing Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975). We note, however, our disapproval of this procedure.

William Lutz, the owner and operator of Lutz's Auto Body Shop, leased his garage from appellant. In late August or early September of 1975, Robert McFarlane engaged Lutz to repair a dune buggy which had been involved in an off-road accident. The dune buggy, which McFarlane owned and built himself, was towed from the site of the wreck to Lutz's garage where it was placed outside with other cars waiting to be repaired. McFarlane visited the garage on several occasions to ascertain the progress, if any, of the buggy's repair. On his last trip, McFarlane was unable to locate the buggy and immediately relayed this information to Lutz who searched for the vehicle to no avail.

Lutz testified that he contacted neighbors about the buggy's possible whereabouts. He asked appellant, whose residence was approximately one-half mile from the garage, either on the same day or within the week that the buggy was discovered missing whether he had any information concerning its disappearance. Appellant denied having such information. McFarlane thus reported the buggy stolen to the Union Township Police Department.

The dune buggy was ultimately recovered on December 10, 1976, after a police search of a garage underneath a vacant house adjoining Lutz's Auto Body Shop. The search was authorized by a warrant which was based upon information received on December 9, 1976 from a confidential informant who was a neighbor of appellant. To avoid any damage when entering the garage, the officer who conducted the search first went to appellant's residence to obtain a key since he knew the house was vacant and that appellant's wife had originally been raised there. In fact, appellant did have a key because he had promised his father-in-law, the owner of the property, to oversee its maintenance. Appellant willingly unlocked the garage door to admit the investigating officer and even assisted in removing scrap and other automotive parts which were heaped on top of the buggy nearly concealing it from view. Although some of its parts were missing, the buggy was identified as the one described

in the warrant and, shortly afterwards, appellant was arrested on charges of theft and receiving stolen goods.[5]

Appellant's insufficiency of the evidence argument rests on the following contentions. Appellant argues that the dune buggy was first brought to Lutz's garage sometime between January and March 1975, and that it had been parked on private property not subject to the lease agreement. Appellant maintains that he repeatedly requested Lutz to remove the buggy since it looked like discarded "junk" and was illegally parked on the land surrounding his father-in-law's vacant house. Appellant testified that he had been told by Lutz that someone had given him the buggy, and that he intended to restore it for his own use. Lutz never even began work on the buggy, however, and, in fact its parts were being cannibalized. Eventually other difficulties arose between appellant and Lutz which caused the lease to be terminated. Thereafter, appellant took possession of the dune buggy since allegedly he assumed that Lutz had vacated the leased premises and that he had abandoned the buggy as junk. Appellant further asserts that Lutz never inquired as to the buggy's whereabouts after it had been placed in the garage.

Resolution of appellant's claim that the evidence was insufficient to sustain his conviction is, of course, a question of credibility. In determining whether the evidence is sufficient to prove beyond a reasonable doubt that the defendant is guilty of the crime charged, we accept as true all the evidence upon which, if believed, the jury could have properly based its verdict. *See Commonwealth v. Lawrence*, 428 Pa. 188, 236 A.2d 768 (1968). To be guilty of theft by unlawful taking or disposition, a criminal defendant must unlawfully take, or exercise control over, the movable property of another with intent to deprive him thereof. *Commonwealth v. Richardson*, 238 Pa.Super. 410, 357 A.2d 671 (1976). While the Commonwealth must prove every essential element of a crime beyond a reasonable doubt, it

---

**5.** 18 Pa.C.S.A. § 3925. The charge of receiving stolen property was later dismissed.

may sustain this burden by means of wholly circumstantial evidence. *Commonwealth v. Richardson*, 238 Pa.Super. at 413, 357 A.2d at 673. Viewed in this light, there was ample testimony adduced at trial from which a jury could conclude that appellant was guilty.

■ Appellant testified that he removed the buggy and placed it in a garage underneath a vacant house over which he exercised exclusive control. Appellant also admitted telling no one that he had taken the buggy, even though he knew it belonged to Lutz or someone else. While the garage was no more than twenty feet from Lutz's repair shop, there was abundant testimony that the garage's interior was not visible through its window-glass. Concededly, there was disagreement whether the windows were actually boarded up or merely obscured by dirt. But even appellant, who emphatically denied that the windows had ever been covered, admitted that a light would be necessary to see inside the garage.

■ Whether the taking of the buggy occurred on property subject to the lease was a clear question of fact for the jury. Lutz testified that the property on which he parked the buggy had been subject to his free use from the beginning of the lease term, and that, with appellant's consent, he had even paid for a load of gravel to be deposited for this area's improvement. Lutz further testified that the only restriction on his use of the property in dispute was that its back driveway should remain unobstructed. Our review of this record convinces us that the evidence is adequate to sustain the verdict rendered.[6]

**6.** Appellant also argues that (1) the evidence cannot form a sufficient basis in law to constitute an unlawful taking since he acquired a legal right to the possession of any movables which remained on the leased premises after the leasehold terminated, and (2) under the circumstances presented the prosecution did not establish the requisite "intent to deprive" in accordance with 18 Pa.C.S.A. § 3921(a). We do not reach the merits of these contentions, however, since this court will not *sua sponte* review issues not properly before it. *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 257 (1975); *Commonwealth v. Smith*, 258 Pa.Super. 148, 392 A.2d 727 (1978).

■ Appellant's next assignment of error is that the trial court erred in charging the jury. In particular, appellant raises the following three objections to the court's charge: (1) the trial judge failed to define for the jury the meaning of the terms "unlawful taking, or control"; (2) the trial judge failed to instruct the jury upon the definition of "intent" as set forth in 18 Pa.C.S.A. § 302(b)(1)(i), (ii), and (3) the charge given on the issue of abandonment, considered in the light of additional points for charge, was erroneous. Although appellant concedes that he failed to object to these portions of the judge's charge before the jury retired to deliberate, *see* Pa.R.Crim.P. 1119, he claims that these errors are nonetheless cognizable on appeal because they are basic and fundamental errors which justify reversal even absent objection. Appellant thus implores us to disregard those supreme court decisions which have firmly rejected the doctrine of basic and fundamental error as an exception to Pa.R.Crim.P. 1119. *See, e. g., Commonwealth v. Wallace,* 475 Pa. 27, 379 A.2d 558 (1977); *Commonwealth v. Dukes,* 460 Pa. 180, 331 A.2d 478 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). We refuse and, thus, are precluded from considering appellant's claim.

■ Appellant next contends that he was denied the effective assistance of trial counsel.[7] His first three argu-

In *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), the supreme court required that all issues which a defendant wishes to preserve for appellate review must initially be presented to the lower court in specific, written post-trial motions. *See* Pa.R.Crim.P. 1123. Although appellant filed post-verdict motions *nunc pro tunc,* he did not raise these specific contentions in support of his challenge to the sufficiency of the evidence. Indeed, no written brief was even submitted to the court below from which it could be held that these specific allegations were preserved. *See Commonwealth v. Tegano,* 265 Pa.Super. 453, 455, 402 A.2d 526, 527 (1979) *citing Commonwealth v. Grace,* 473 Pa. 542, 375 A.2d 721 (1977). Accordingly, we find that appellant may not litigate these issues for the first time on appeal. *See Commonwealth v. Horsey,* 481 Pa. 470, 474, 393 A.2d 1, 2 (1978); *Commonwealth v. Ford,* 472 Pa. 542, 545, 372 A.2d 821, 822 (1977).

7. Ineffectiveness of prior counsel must be raised at the earliest stage in the proceedings at which counsel, whose ineffectiveness is being challenged, no longer represents the appellant. *Commonwealth v.*

ments marshalled in support of ineffectiveness are that appellant's trial counsel: (1) failed to attempt to establish the date the lease had terminated; (2) failed to discuss in summation the legal effect of the buggy being taken by appellant after the lease was terminated; and (3) failed to discuss in summation the legal effect of appellant's belief, even if mistaken, that the lease was terminated at the time he took the buggy. We treat these three contentions as bearing directly upon appellant's argument that counsel's defense strategy was ineffective since it foreclosed the possibility of obtaining an acquittal on the ground that either the lease's termination created in himself a legal right to any movables which remained on the leased premises, or that he reasonably misperceived such a right to exist.

 As has been frequently repeated by our appellate courts,

> Our task in cases of this nature ... encompasses an independent review of the record ... and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives ... We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record ... [T]he balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

*Seachrist*, 478 Pa. 621, 387 A.2d 661 (1978); *Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199 (1978). Although appellant retained new counsel shortly after sentencing, he did not raise ineffectiveness of trial counsel in his post-verdict motions *nunc pro tunc*. Appellant has not waived that issue, however, because (1) he asserted trial counsel's ineffectiveness on direct appeal which, under the circumstances of this case, was the earliest possible stage in the proceedings, and (2) a finding of waiver would only place a useless burden on the courts by further delaying resolution of trial counsel's alleged ineffectiveness until a future contest over direct-appeal counsel's ineffectiveness for failing to preserve that claim.

*Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604–5, 235 A.2d 349, 352–53 (1967). (citations and footnote omitted).[8] Under the circumstances presented, we cannot conclude that trial counsel's decision not to present evidence in favor of the existence of a claim of right (or appellant's misconception of the law and his rights thereunder) had no reasonable basis designed to effectuate his client's interest. From our examination of the record, it is apparent that trial counsel would not have been able to develop from direct examination of his client the exact date the oral lease agreement was terminated or even if it was terminated before the buggy was removed. Second, and perhaps more importantly, appellant unerringly testified that the buggy had been parked on private property not subject to the lease agreement. This fact, if true, would negate any attempt by appellant to assert that he was entitled to take charge of the buggy because it was parked on leased premises. Thus, trial counsel could reasonably have decided that the presentation of this defense would have offered no potential for success substantially greater than the tactics actually utilized. *See generally, Commonwealth v. Turner,* 469 Pa. 319, 324, 365 A.2d 847, 849 (1976); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605 n. 8, 235 A.2d 349, 353 n. 8 (1967).

Appellant also contends that his trial counsel was ineffective for failing to mention in summation the legal effect of his entertaining a mistaken belief that the buggy was abandoned and of the buggy being parked on property not subject to the lease. It is true, of course, that trial counsel need not refrain from discussion of applicable principles of law in addressing the jury during closing argument. Indeed, our supreme court has recently stated that a "law-

8. If it is apparent from the record that the actions claimed to constitute ineffectiveness were in fact constitutionally effective, the judgment must be affirmed. *Commonwealth v. Hudson,* 455 Pa. 117, 314 A.2d 231 (1974). Where, on the other hand, the record does not disclose whether or not trial counsel's tactical decisions could have had a rational basis, this court must remand for an evidentiary hearing to allow trial counsel to state his reasons for the particular course chosen. *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975).

yer should not be expected to discuss facts in a vacuum [since] it is generally necessary to consider them in light of the rules of law which a case involves." *Commonwealth v. Gwaltney*, 479 Pa. 88, 93–94, 387 A.2d 848, 850 (1978).[9] It does not necessarily follow however, that counsel *must* discuss legal questions relevant to the case being tried in his summation. Rather, it is the province of the trial court to instruct the jury as to the law which applies in a particular case. *See, e. g. Commonwealth v. McKetta*, 469 Pa. 223, 227, 364 A.2d 1350, 1352 (1976); *Commonwealth v. Peterman*, 430 Pa. 627, 631, 244 A.2d 723, 726 (1968).

■ In his closing argument to the jury, trial counsel described a scenario in which appellant was continually frustrated by Lutz's refusal to remove the discarded buggy from his father-in-law's property. He then argued that appellant finally got rid of the buggy by placing it in the garage underneath his father-in-law's vacant house when Lutz abandoned the leased premises. Appellant does not claim that trial counsel misstated the applicable law, but only that he failed to explore the legal consequences of his entertaining a mistaken belief that the buggy was abandoned and of the buggy being parked on property not subject to the lease. We cannot hold that trial counsel's decision to forego any discussion of the law lacked any reasonable basis designed to effectuate his client's interest. Counsel reasonably decided as a matter of trial strategy that "the opportunity to marshall the evidence and to present it, along with the permissible inferences arising therefrom, to the jury in the best possible light on behalf of his client, and to attempt to explain away the evidence which [was] unfavorable", far outweighed the risk of error and confusion in arguing questions of law to the jury. *Commonwealth v. Gwaltney*, 479 Pa. at 93, 387 A.2d at 850 (footnotes omitted).

**9.** *See generally*, Annot., 67 A.L.R.2d 245. In *Gwaltney*, it was also stated, however, that when counsel chooses to refer to rules or principles of law in closing argument, he should normally inform the jury that they will receive their authoritative instruction on the law from the court. 479 Pa. at 94, 387 A.2d at 850.

 The final claim of trial counsel's ineffectiveness is based upon his failure to offer for charge, or object to the judge's exclusion in his charge of any points of law concerning a defendant's mistake of fact or the effect of the buggy being unlawfully parked on property not subject to the lease.[10] Although the test for evaluating a claim of ineffectiveness is whether the record supports a conclusion that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests, counsel cannot be found ineffective for failing to assert a meritless claim. *Commonwealth v. Weathers El*, 485 Pa. 28, 400 A.2d 1295 (1979). Only when an abandoned claim is of arguable merit must we inquire into counsel's basis for not pursuing it. *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978). Instantly, counsel did not object to the trial judge's failure to charge the jury upon either of the above issues. We therefore must look to see if prejudicial error was committed.

 In reviewing jury instructions for prejudicial and reversible error, it is well-established that the charge must be read and considered as a whole. *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978). Error cannot be predicated on isolated excerpts of the charge. Rather, it is the general effect of the charge that controls. *Id.* Also, the only issue in evaluating a challenge to the correctness of instructions is whether the area is adequately, accurately, and clearly presented to the jury. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977). In this case, the charge clearly informed the jury that: (1) appellant had no burden whatsoever of proving his innocence; (2) the Commonwealth had the burden of proving beyond a reasonable doubt every element essential to a finding of guilt; and (3) its obligation as ultimate fact finder was to pass upon the credibility of the witnesses and to determine the weight to be accorded their testimony. The court also examined the relationship

10. We do not address ourselves to any other points of law that appellant claims trial counsel should have offered for charge since they pertain to those assignments of error previously held meritless.

between the Commonwealth's burden of proof and those elements necessary for a finding of guilt:

Now the Defendant is charged with theft by unlawful taking or disposition. In order to find him guilty of theft, you must find that each of the elements of the crime has been established beyond a reasonable doubt. Now there are four elements which the Commonwealth has the burden of proving beyond a reasonable doubt, four elements to the charge of theft. And I will go over each and every one of those and keep in mind, the Commonwealth must prove each and every one of these elements beyond a reasonable doubt.

Number one, they must show that the Defendant took or exercised control over a dune buggy; in this case, the dune buggy belonging to Robert McFarlane. Two, that the dune buggy was the movable property of another person. Again, that would be the property of Robert McFarlane. Now movable property is property, the location of which can be changed. And, of course, a dune buggy falls within that category. Property of another includes property in which any person other than the Defendant has an interest which the Defendant is not privileged to infringe. The third element is that the taking of this dune buggy or the exercise of control over this dune buggy was unlawful. Four, that the taking or exercise of control was with the intent to deprive the owner, in this case, Robert McFarlane, of his property.

Now one acts with intent if it is his conscientious [sic] object to cause a particular result. Deprive means any one of these things; to withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value; or with intent to restore only upon payment of reward or other compensation; or to dispose of the property so as to make it unlikely that the owner will recover it. Now if, after you consider all the evidence, you find that the Commonwealth has established beyond a reasonable doubt all of these four elements which I have stated to you, then you should find

the Defendant guilty of the charge of theft. Otherwise, you should find the Defendant not guilty.

I say it must be proven to you by the prosecution that the Defendant possessed or consisted of all four elements of the charge of theft that I have gone over. If only two of them have been proved, you have to find not guilty. If only one of them has been proved, not guilty. If three had been proved, not guilty. But if all four of the elements have been proven beyond a reasonable doubt, then you can find the Defendant guilty.

Moreover, the trial court's charge impressed upon the jury the importance of appellant's intent at the time he took the buggy and how its abandonment could, as a matter of law, dissipate the criminality of his conduct. Since the charge as a whole fairly embraced the crucial question of intent as well as every other element necessary for conviction, we are convinced that the absence of any direct instruction concerning mistake or the buggy being parked on private property did not constitute prejudicial error. Accordingly, we cannot conclude, as appellant contends we must, that counsel's failure either to object to the jury charge or to request particular instructions was ineffective assistance.

██ Finally, appellant challenges the validity of his guilty plea to the charge of recklessly endangering another person. He argues that he did not enter a valid guilty plea because after-discovered evidence would have established that a corroborating witness to the criminal complaint acquiesced in prevarication. It is the Commonwealth's position that the issue sought to be raised has not been properly preserved for our consideration since appellant did not first petition the trial court for the right to withdraw the plea. *See Commonwealth v. Lee*, 460 Pa. 324, 333 A.2d 749 (1975). We disagree.[11]

11. Although appellant obtained leave to file post-trial motions *nunc pro tunc*, he only filed a motion in arrest of judgment and for a new trial. A motion in arrest of judgment is not the proper procedure for withdrawing a defendant's guilty plea. *Commonwealth v. Dillinger*, 440 Pa. 336, 269 A.2d 505 (1970). Rather, it is the "available means through which to challenge the sufficiency of the evidence after

In *Commonwealth v. Lee*, the supreme court stated that the proper means of challenging the validity of a guilty plea is to file with the trial court a petition to withdraw the plea.[12] *Id.*, 460 Pa. at 327, 333 A.2d at 750. Thus, appellant's argument in favor of withdrawal would, ordinarily, be considered waived because of his failure to file a petition to withdraw the plea. In order to mitigate the potential harshness of the waiver rule set forth in *Lee*, however, the supreme court in *Commonwealth v. Brandon*, 485 Pa. 215, 401 A.2d 735 (1979), recently made clear that a defendant cannot effectively waive his right to assail the validity of his guilty plea on direct appeal unless the record demonstrates that he knowingly and intelligently waived such right. *Id.* In particular, the record must affirmatively establish that the defendant had been advised of his right to file a petition to withdraw his plea and the consequences of his failure to do so. *Commonwealth v. Reed*, 488 Pa. 221, 412 A.2d 477 (1980). *See also Commonwealth v. Berry*, 269 Pa.Super. 283, 409 A.2d 890 (1979); *Commonwealth v. Johnson*, 258 Pa.Super. 214, 392 A.2d 760 (1978). In the present case, although the trial court's colloquy at the time of the entry of the plea was extensive, the court neither advised appellant of his right to file a petition to withdraw his plea nor of the necessity to do so as a prerequisite to appellate review of the validity of the plea. In addition, the record fails to establish appellant was aware of this right from some source other than the on-the-record colloquy. Accordingly, we now turn to the merits of appellant's claim since we cannot find an effective waiver of his right to challenge the validity of this plea on direct appeal. *See generally Commonwealth v. Reed*, 488 Pa. at 223, 412 A.2d at 479.

The record of the plea colloquy discloses the following facts. On June 15, 1977, three teenagers entered appellant's

conviction *in a trial by jury.*" *Id.*, 440 Pa. at 338 n. 2, 269 A.2d 505 n. 2 (emphasis in original).

12. The guilty plea in dispute was entered prior to the effective date of current Pa.R.Crim.P. 320 and 321, effective September 1, 1977, which provide the proper procedure to be followed where objection is raised to the validity of a plea.

property and began throwing stones and other objects toward him. To cause them to flee, appellant pointed a loaded pistol at one of the teenagers.

Appellant argues that his guilty plea was invalid on the basis of after-discovered evidence consisting of the statement of another teenager who appellant contends, misrepresented to the police that he has seen the above events. The father of this teenager allegedly told appellant's wife on July 30, 1977 that his son had confessed that he had not witnessed any of the acts complained of, and that he had lied only because his earlier statement had been extorted by the police.

In *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973), the supreme court held that a court should allow the withdrawal of a guilty plea after sentencing to correct a manifest injustice to the defendant. Subsequently, the supreme court determined that any after-discovered evidence which would justify a new trial would also satisfy the requirements of *Starr, supra*. *Commonwealth v. Peoples*, 456 Pa. 274, 319 A.2d 679 (1974). For a defendant to be entitled to a new trial where he has produced after-discovered evidence, "the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must now be cumulative or merely impeach credibility, and must be such as would likely compel a different result." *Commonwealth v. Bulted*, 443 Pa. 422, 279 A.2d 158 (1971).

Instantly, appellant has failed to satisfy even the first prong of this four-part test. Appellant contends that the corroborating witness' inculpatory statement was after-discovered because it had been made after the judgment of sentence. However, in arguing that he had exercised due diligence, appellant admits that he had knowledge of the corroborating witness' first statement at the time of sentencing. Indeed, appellant even admits that he pled guilty only because there was no reason to believe that the corroborating witness would change his story by the time of trial.

Proceeding no further, it is obvious that appellant recognized that the corroborating witness' statement was false at the time of the entry of the plea. In these circumstances, we cannot agree with appellant that the inculpatory statement was after-discovered simply because it had been made after the time of sentencing. To invalidate the plea because appellant was not *expressly* told of facts which he already believed to exist would be tantamount to holding that evidence within the knowledge of a defendant and available to him at the time of sentencing can be "after-discovered." *Cf. Commonwealth v. Reid*, 432 Pa. 319, 323, 247 A.2d 783, 785 (1968) (evidence of physical illness within the knowledge of a defendant is not after-discovered evidence as might compel the grant of a new trial).

For the reasons herein set forth, we affirm the judgments of sentence.