J-A33039-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LEE A. HARRIS, | : | |
| | : | |
| Appellant | : | No. 683 WDA 2016 |

Appeal from the Judgment of Sentence December 4, 2015
in the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0000038-2014

BEFORE:     LAZARUS, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:     **FILED JANUARY 27, 2017**

Lee A. Harris (Appellant) appeals from the judgment of sentence of six to 18 months of imprisonment, plus restitution in the amount of $20,120.79, following her convictions for various theft offenses.  We affirm.

The trial court summarized the facts underlying Appellant's convictions as follows.

> [Appellant] was hired in 2004 to manage Penn Ohio Storage.  Penn Ohio Storage is located in Sharon, Pennsylvania, and is a self-storage facility containing 240 units.  [Appellant's] job duties included collecting all of the rents, recording the rents and depositing the rents.
>
> The occupancy rate for the business remained consistent at 80% throughout all times material to this case.  The rents collected stayed consistent from the date of [Appellant's] hire until December of 2011.
>
> The rents deposited in December of 2011 fell from $11,000 in November of 2011, to $5,000.

---

*Retired Senior Judge assigned to the Superior Court.

The months that followed also showed substantial reductions in the rents reported collected even though the occupancy rate remained the same. It bottomed out in March of 2012 when they dropped to $4,500.

[Appellant] was fired at the beginning of June 2012.

Since [Appellant's] firing, the rents collected returned to the level prior to December of 2011 and there have been no major fluctuations in the monthly collections.

A forensic accounting of the business was conducted by Thomas Davis, Jr., at the Owner's expense. The accounting showed that the average monthly collection rate when [Appellant] was handling the receipts was $6,657. After [Appellant] was fired, the average monthly collections rose to $12,649. Davis's opinion was that $20,120 was missing from the rents collected.

[Appellant's] expert, Tyler Hankins, also concluded that $20,122 in cash was missing. Hankins admitted on cross examination that where only one person receives the cash, as here, that that person would be the possible person to blame if cash went missing.

At the time of [Appellant's] arrest on September 12, 2014, she told her paramour to call an attorney. When he asked why, [Appellant] responded "I stole."

Trial Court Opinion, 6/3/2016, at 3-4 (citations omitted; format of dollar amounts modified).

On October 16, 2015, a jury convicted Appellant of theft by unlawful taking-movable property, theft by failure to make required disposition of funds, and theft by deception.[1] Following the denial of her timely-filed post-

---

[1] Appellant was acquitted of an additional charge of forgery at the close of the Commonwealth's case.

sentence motion, Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant contends that there was insufficient evidence to sustain her convictions, and that the verdicts were against the weight of the evidence. Appellant's Brief at 4.

We begin with her sufficiency challenges.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal citations and quotation marks omitted).

"A defendant may be convicted of theft by deception if he [or she] intentionally obtains property from another person by deception. The Commonwealth must demonstrate not only the presence of a false impression but that the victim relied upon that impression." *Commonwealth v. Lawson*, 650 A.2d 876, 880 (Pa. Super. 1994) (citations omitted). "To be guilty of theft by unlawful taking or disposition, a criminal defendant must unlawfully take, or exercise control over, the movable property of another with intent to deprive him thereof." *Commonwealth v. Crawford*, 427 A.2d 166, 170 (Pa. Super. 1981). Finally,

> the crime of theft by failure to make required disposition of funds received is composed of four elements: 1) the obtaining of the property of another; 2) subject to an agreement or known legal obligation upon the receipt to make specified payments or other disposition thereof; 3) intentional dealing with the property obtained as the defendant's own; and 4) failure of the defendant to make the required disposition of the property.

*Commonwealth v. Morrissey*, 654 A.2d 1049, 1052 (Pa. 1995).

In the instant case, Appellant's argument is that the evidence was insufficient to sustain her convictions because the Commonwealth failed to establish that she ever actually received the customers' rent payments. Appellant's Brief at 20-21. We disagree.

Becky Miniea testified that her husband owned Penn-Ohio Self Storage, and that she took over the day-to-day operations of the business after they married. N.T., 10/14/2015, at 21. When another of his

- 4 -

businesses required their full attention in Ohio, Appellant was hired to take over running the operation. *Id.* at 23, 27. They relied upon Appellant to be there every day to take the deposits. *Id.* at 29. The business used a computer with accounting software to track customers' accounts; only Ms. Miniea and Appellant had full access to all security levels within it, including being able to credit accounts. *Id.* at 37-39. James Fitzgerald, who rented office space from the Minieas, testified that Appellant "ran the window. She took in customers, took their money, took the money to the bank, ran all of the storage units, 100 percent." N.T., 10/15/2015, at 5.

In 2010, after Appellant had run the facility for years, monthly deposits suddenly dropped from $11,000 in November to $5,000 in December. N.T., 10/14/2015, at 28. When Ms. Miniea questioned Appellant about it, Appellant told her that a lot of people did not pay that month, but they probably would pay after Christmas. *Id.* at 28-29. Deposits continued to be low, and to "jump all over the place" despite the fact that the number of tenants remained steady. *Id.* at 30. When the monthly deposit fell to $4,500 in March 2012, Ms. Miniea again questioned Appellant, who opined that it was just a bad month and the following month would be better. "Miraculously, the next month we had $9,000[] in deposits." *Id.* at 42. However, the deposits did not return to their former, steady levels until after Appellant stopped managing the business. *Id.* at 30, 43-44.

Thomas Davis, whose expertise in accounting was acknowledged by Appellant, reviewed the cash transactions in the business's records. N.T., 10/15/2015, at 28-30. He determined that the business's accounting software was used 183 times between May 2011 and October 2012 to add a payment into the ledger then reverse that amount back out. *Id.* at 31-34. Coupled with each of those reversed cash transactions was a reverse in the monthly rent charge. *Id.* This coupling of cash-payment and rent-due reversals balanced the books, such that "it would appear that everyone was current, even though there was no deposit. *Id.* at 47. These reversals were not random occurrences; the entries had to have been done manually. *Id.* at 34-35. "It wasn't every single transaction. It wasn't every single month. It was just periodic through the accounts and through the months." *Id.* at 34. However, after Appellant stopped working at the business, the "cash deletion transactions" ceased; thereafter, all of the cash payments entered were subsequently deposited. *Id.* at 39. The amounts of cash transactions reversed out during Appellant's tenure totaled $20,120. *Id.* at 41.

Finally, then-patrolman Edward Stabile of the Sharon Police Department testified that he went to Appellant's home to serve an arrest warrant on her on September 17, 2013. *Id.* at 22. When she came to the door and was informed of the arrest warrant, Appellant yelled back into the house and asked him to call someone. When a man replied "why?" Appellant said "I stole." *Id.* at 23-24.

From this circumstantial evidence and its reasonable inferences, it was well within the jury's province to conclude that Appellant took cash that belonged to Penn-Ohio Self Storage and which she was supposed to deposit in the company's account, but kept it for herself, covering her tracks by altering the transaction records. *See*, *e.g.*, *Commonwealth v. Quel*, 27 A.3d 1033, 1041 (Pa. Super. 2011) (rejecting, following convictions for the same crimes at issue in the instant case, the claim that evidence was insufficient to establish that the appellant was the one who took the funds where "through an abundance of uncontradicted circumstantial evidence, the Commonwealth established [that the a]ppellant intentionally and deceptively withheld currency that belonged to the school district by removing cash from deposit envelopes after verifying their contents in [accounting software] which created the false impression that the various student groups' finances were in order"). No relief is due.

Appellant next claims that the verdict was against the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the

evidence and that a new trial should be granted in the interest of justice.

> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 560 Pa. 308, 321-22, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

The trial court offered the following analysis of Appellant's weight claim:

> There was nothing in the evidence to suggest it was so unreliable or contrary as to make any verdict based thereon to shock one's sense of justice. It was undisputed that [Appellant] was the sole person collecting the rents for the time in question. Both sides experts agreed over $21,000.00 in cash was missing. The officer was positive that [Appellant] said "I stole" when asked why she was being arrested.[2]

Trial Court Opinion, 6/3/2016, at 5-6.

After a thorough examination of the record, we conclude that there was no abuse of discretion in the trial court's determination that the verdict was not against the weight of the evidence.

Judgment of sentence affirmed.

---

[2] Appellant's counsel, in cross-examining Sergeant Stabile, asked whether he was aware that Appellant had consulted with an Attorney Isoldi and if he was "a hundred percent sure that she said 'I stole.'" N.T., 10/15/2015, at 25. He indicated that he was sure she said "I stole." *Id.*

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>1/27/2017</u>