J-S31009-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHANE D. LAFFERTY | : | |
| | : | |
| Appellant | : | No. 1280 WDA 2018 |

Appeal from the PCRA Order Entered August 14, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004063-2014

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    FILED OCTOBER 02, 2019

Appellant, Shane D. Lafferty, appeals from an order entered on August 14, 2018, which dismissed his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On a previous appeal, we summarized the facts of this case as follows:

An undercover investigation into the possession and distribution of child pornography by Pennsylvania State Police's Southwest Computer Crime Task Force led the police to obtain a warrant to search an address on Fallowfield Avenue in Pittsburgh[, Pennsylvania]. Police executed the warrant on October 29, 2013. When no one answered the door after they knocked loudly for over a minute, police kicked in the door. They found Appellant exiting an upstairs bedroom. Appellant's laptop computer was on the bed with a file sharing program running. No other person was in the room at that time. [Police then seized Appellant's laptop].

* * *

At the time Appellant's laptop was seized, he participated in a tape-recorded interview by the police in which he denied responsibility for the child pornography on the laptop.

Commonwealth v. Lafferty, __A.2d__, 573 WDA 2015 (Pa. Super. 2017) (unpublished memorandum), at 1-21 (citation omitted).

Subsequently, a forensic investigation of Appellant's laptop computer confirmed that it contained child pornography. Id. at 2. Appellant was arrested in March 2014. Id. At trial, Appellant conceded that his laptop contained child pornography, but alleged that others used the laptop and may have downloaded the contraband files without his consent or knowledge. See Trial Court Opinion, 9/26/16, at 2. In particular, Appellant called several witnesses to incriminate an individual named David Cross. See id. at 6. In its case-in-chief, the Commonwealth relied upon the testimony of two police officers, Corporal John Roche and Corporal Gerhard Goodyear. See id. at 4-5. Additionally, David Cross testified during the Commonwealth's rebuttal under a grant of immunity. See id. at 6.

During the course of jury deliberations, the jury asked to hear the tape of Appellant's interview with the police on the day the laptop was seized. See Lafferty, __A.2d__, 573 WDA 2015 (Pa. Super. 2017) (unpublished memorandum), at 4-5 (citation omitted). Corporal Goodyear, the Commonwealth's witness, played the tape for the jury. The trial court recounted these events as follows:

> Corporal Goodyear entered the jury room on two separate occasions to play an audio file of the police interview with Appellant that was on the Commonwealth's laptop. [Defense] counsel was informed that Corporal Goodyear was going to play the audio for the jury but counsel mistakenly presumed a technician from the Office of the District Attorney, and not the

- 2 -

> [Corporal] who had testified [for the Commonwealth], would be the individual who entered the jury room.

Trial Court Opinion, 9/26/16, at 11-12 (footnote omitted) (explaining that, if a jury requested evidence contained on a Commonwealth laptop, the trial court's practice at that time was, with the consent of counsel, to permit a technician from the Office of the District Attorney to enter the jury room with the tipstaff to operate the laptop).

After learning that a Commonwealth witness entered the jury room, Appellant's counsel placed an objection on the record. See N.T. Trial, 2/17/15 (Volume I), at 539. However, after conferring with Appellant, counsel decided against moving for a mistrial. Id. at 548. On February 20, 2015, the jury convicted Appellant of two counts of possession of child pornography.[1] See Trial Court Opinion, 9/26/16, at 1. On February 24, 2015, the trial court sentenced Appellant to two to four years' incarceration with six years' consecutive probation. Id.

On March 6, 2015, Appellant filed the following post-sentence motions: a motion to reconsider sentence, a motion for judgment of acquittal, and a motion for arrest of judgment. See Post-Sentence Motions, 3/6/15, at 1-5. The trial court denied the post-sentence motions on March 10, 2015. On April 9, 2015, Appellant filed a timely notice of appeal to this Court. This Court affirmed the Appellant's judgment of sentence on September 27, 2017. See

---

[1] Appellant was acquitted on two counts of dissemination of photo/film of child sex acts and one count of criminal use of a communication facility.

Lafferty, __A.2d__, 573 WDA 2015 (Pa. Super. 2017) (unpublished memorandum), at 1-21 (citation omitted). Appellant did not seek further review of this Court's decision.

On December 7, 2017, Appellant filed the current PCRA petition. Counsel amended the petition on June 21, 2018. On June 23, 2018, the PCRA court issued notice that it intended to dismiss Appellant's PCRA petition in 20 days without a hearing because it determined that Appellant's petition was "patently frivolous and without support in the record." PCRA Court Order, 6/23/18, at 1; see also Pa.R.Crim.P. 907(1). Thereafter, Appellant filed a response to the Rule 907 notice. The PCRA court dismissed Appellant's petition on August 14, 2018. Appellant filed a timely notice of appeal.

Appellant raises the following issues on appeal:

I.   Whether counsel was ineffective for failing to effectively respond to the Commonwealth's lead investigator's entrance into the jury room and interaction with the jury during its private deliberations?

II.  Whether counsel was ineffective for failing to request a supplemental instruction that defined the term "possession" for the jury when Appellant's possession of child pornography was a key issue of the case?

III. Whether counsel was ineffective for failing to explain the legal meaning of "possession" to the jury during his closing argument?

See Appellant's Brief at 2-3.

Our standard of review is as follows:

As a general proposition, an appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. The court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the

PCRA court's hearing, viewed in the light most favorable to the prevailing party.

* * *

To prevail on a claim that counsel was constitutionally ineffective, the [petitioner] must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

Commonwealth v. Hammond, 953 A.2d 544, 556 (Pa. Super. 2008) (citations and quotations omitted) (emphasis added).

In Appellant's first issue, he raises three distinct claims of ineffectiveness based upon counsel's alleged failure to "effectively respond" to a Commonwealth witness's "'violat[ion of] the sanctity' of the jurors' private deliberations." Appellant's Brief at 35. Specifically, Appellant claims that trial counsel was ineffective for failing to: move for a mistrial, request an opportunity to question the jurors, and request that a cautionary instruction be issued to the jury. See Appellant's Brief at 26-27.

At the outset, we review the specific facts giving rise to Appellant's claims. Trial testimony revealed that Corporal Goodyear, the Commonwealth's witness, initially testified as an expert on computer forensics and peer-to-peer file sharing investigations. See Trial Court Opinion, 9/26/16, at 4. During his testimony, Corporal Goodyear explained, in general terms, how child pornography is distributed and how the police detect its

possession and dissemination.  See N.T. Trial, 2/17/15 (Volume I), at 54-148.

Additionally, he testified concerning the particular investigation of the

Appellant.  See id.  Subsequently, during jury deliberations, on two separate

occasions, the jury asked to hear an audio recording of the police interview of

Appellant conducted after they executed the search warrant on October 29,

2013.[2]  See id. at 512 and 537.  Following each request, Corporal Goodyear

entered the jury room to replay the audio file containing the interview for the

jury.  See id. at 538-548.  In addition to the audio file, Corporal Goodyear

provided the jury with printed versions of a power point presentation given by

the Commonwealth during trial.  See id. at 541 & 545.

On the first occasion, the trial court's tipstaff accompanied Corporal

Goodyear to the jury room, but left the room when Corporal Goodyear began

to replay the audio file.  See id. at 541.  The next day, following a second

request by the jury, Corporal Goodyear again brought the audio file to the jury

room, but the trial court's tipstaff replayed the recording for the jury.  See id.

at 541-542.  Apart from replaying the taped interview, the only explicit

interaction between Corporal Goodyear and the jury occurred when the jury

asked him if he could leave the room while the audio file played.  See id. at

541.  To this, Corporal Goodyear explained that "somebody needed to be there

with them" because the external drive containing the interview recording had

_____

[2] The jury originally heard the interview at trial.  See id. at 169.

additional information that the jury was "not privy to." Id. No further communication occurred.

Trial counsel objected on the record after learning that Corporal Goodyear entered the jury room during deliberations. See id. at 539. Thereafter, counsel questioned both Corporal Goodyear and the court's tipstaff on the record to determine the extent of the Corporal's interaction with the jury. See id. at 545-547. Trial counsel then conferred with Appellant and ultimately decided against moving for a mistrial after observing that "it was a good faith mistake." See id. at 547-548. We will now address each of Appellant's issues in turn.

First, Appellant argues that trial counsel was ineffective for failing to move for a mistrial. See Appellant's Brief at 26. This claim lacks arguable merit.

Ex parte contact between jurors and witnesses is viewed with disfavor. Commonwealth v. Brown, 786 A.2d 961, 972 (Pa. 2001). However, our Supreme Court has recognized that "there is no per se rule requiring a mistrial anytime there is . . . contact between a juror and a witness." Commonwealth v. Tharp, 830 A.2d 519, 532 (Pa. 2003) (emphasis added). Rather, "explicit in the cases involving [improper or inadvertent] juror contact is the requirement that the defendant show that he was prejudiced." Commonwealth v Szakal, 50 A.3d 210, 220 (Pa. Super. 2012), quoting Commonwealth v. Santiago, 318 A.2d 737 (Pa. 1974). A showing of prejudice is unlikely when the contact between a witness and juror is minimal

and is not done "for the purpose of influencing the jury." Commonwealth v. Mosley, 637 A.2d 246, 249 (Pa. 1993).

Upon review, we conclude that the interaction between Corporal Goodyear and the jury did not prejudice Appellant. The Corporal's contact with the jury was short and limited to playing the requested recording. He did not relay any additional information to the jury, nor did he make any substantive comments about the audio file or the case. Instead, Corporal Goodyear merely replayed evidence that the jury previously heard. Thus, Appellant's first claim fails because it lacks arguable merit.

Next, Appellant argues that trial counsel was ineffective for failing to request the trial court to question the jury or issue a cautionary instruction regarding Corporal Goodyear's actions. See Appellant's Brief at 26. Essentially, Appellant contends that both actions were necessary to ensure that the jury did not "give any greater weight to [Corporal] Goodyear's testimony" and remained impartial. See id. at 33-34. We disagree.

It is "well settled that the decision whether to seek a jury instruction implicates a matter of trial strategy." Commonwealth v. Koehler, 36 A.3d 121, 146 (Pa. 2012), quoting Commonwealth v. Lesko, 15 A.3d 345, 401 (Pa. 2011). As such, a finding that trial counsel had a "reasonable trial strategy" will preclude a claim of ineffective assistance of counsel. Lesko, 15 A.3d at 401. In considering whether counsel acted reasonably,

> we look to whether no competent counsel would have chosen that action or inaction, or, [whether] the alternative [course of conduct], not chosen, offered a significantly greater potential

chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Commonwealth v. Barnett, 121 A.3d 534, 540 (Pa. Super. 2015). Additionally, to succeed on a claim of ineffective assistance, an appellant must establish prejudice. Prejudice requires a showing that "counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.'" Commonwealth v. Charleston, 94 A.3d 1012, 1019 (Pa. Super. 2014), quoting Commonwealth v. Pierce, 527 A.2d 973, 977 (Pa. 1987).

In this instance, Appellant failed to demonstrate that counsel's inaction adversely affected the outcome of the proceeding. In essence, Appellant claims that prejudice resulted simply because of the intrusion itself. See Appellant's Brief at 35. This is insufficient. Notably, there is no indication that the jury gave greater weight to Corporal Goodyear's testimony as a result of his entrance into the jury room. See Appellant's Brief at 33. In fact, the result of the proceeding indicates the opposite. The jury acquitted Appellant of three of the five charges. Accordingly, the Corporal's actions during jury deliberations "d[id] not ineluctably mean that [the] jury w[as] unfair or partial." Commonwealth v. Tedford, 960 A.2d 1, 20 (Pa. 2008). Therefore, Appellant's failure to rebut the evidence that the jury was fair and impartial, and his related failure to demonstrate prejudice, renders his claim of ineffective assistance of counsel meritless. See id.

In Appellant's second issue, he argues that trial counsel was ineffective for failing to request a supplemental jury instruction explaining the "legal meaning" of the term "possession." See Appellant's Brief at 27. This claim is meritless.

Generally, a court's jury instructions must be read in their entirety to determine if they are fair and complete. The trial court has broad discretion in phrasing the charges. Commonwealth v. Daniels, 963 A.2d 409, 410 (Pa. 2009). Jury instructions will not be found in error if, taken as a whole, they adequately and accurately set forth the applicable law. Id.

In this instance, the trial court provided, verbatim, the Pennsylvania Suggested Standard Criminal Jury Instructions for possession of child pornography. See N.T. Trial, 2/17/15 (Volume I), at 498-499. The court explicitly noted that, to be found guilty, the prosecution must prove beyond a reasonable doubt that Appellant "possessed," "controlled," or "intentionally viewed" the prohibited materials. Id. Additionally, the court further defined the term "intentionally viewed." Id. It explained that this term required deliberate, purposeful, and voluntary viewing of child pornography. Id. The instructions pertaining to possession of child pornography, coupled with the additional explanation of the requisite mens rea for intentional viewing, were proper. Thus, trial counsel was not ineffective for failing to request supplemental instructions.

Furthermore, under the facts of this case, Appellant's proffered definition of "possession" is inapplicable. Appellant asserts that counsel

should have requested supplemental instructions narrowly defining possession "in the controlled substances context." Appellant's Brief at 29; see also Pa.S.S.J.I. 16.02(b)A. Such instructions require the prosecution to establish that the defendant "knew 'where and what' the contraband was" and that "the defendant had both 'the intent to control and the power to control' the contraband." See Pa.S.S.J.I. 16.02(b)A. In other words, Appellant claims that this case warranted an instruction on constructive possession. See Commonwealth v. Brown, 48 A.3d 426, 430 (Pa. Super. 2012) ("We have defined constructive possession as 'conscious dominion.' We subsequently defined 'conscious dominion' as 'the power to control the contraband and the intent to exercise that control.'") (emphasis added). An instruction on constructive possession would have been superfluous in the context of this case.

This case turned on the jury's determination of who, in fact, downloaded the child pornography. Indeed, trial counsel made this exact argument in his opening statement. Counsel explicitly explained that

> [the] defense [is] a sniper shot . . . Shane did [not] possess [the child pornography,] [] it was David Cross that downloaded it. Yes, it was Shane's laptop. No, Shane did [not] share this. He did [not] download it. He did [not] look at it. He did [not] even know it was there.

N.T. Trial, 2/17/15 (Volume I), at 51. Consequently, Appellant's defense revolved around convincing the jury that David Cross was the guilty party. This, essentially, required the jury to make a credibility determination based

upon the lay definition of "possession." Notably, the facts presented at trial support the jury's ultimate findings.

First, as mentioned above, Appellant conceded that he owned the laptop in question, and that the laptop contained child pornography. See Trial Court Opinion, 9/26/16, at 2. Second, during the execution of the search warrant at Appellant's home, the police found Appellant exiting his room where the laptop was on his bed, with a file sharing program running. See N.T. Trial, 2/17/15 (Volume I), at 161. Corporal Roche testified that he "saw the file sharing program up, maximized, filling the screen, running at the time [] [he] got there." Id. at 171. Additionally, Corporal Roche specified that no one else had access to the laptop at that time. See id. at 172. Accordingly, any assertion that Appellant did not know that a file sharing program was on his laptop, or that he did not (or could not) make use of such a program, is contradicted by the record.

Third, Corporal Roche testified regarding the forensic investigation conducted on Appellant's laptop. He explained that, during the investigation, he reviewed certain files contained within the laptop. See id. at 185-186. One file called "Shane's Food Stamp" was created on July 9, 2013, and was accessed for a significant period of time on that same day. See id. This file contained child pornography. See id. Additionally, the parties stipulated to the fact that Appellant did not have access to his computer from April 5, 2013, until June 27, 2013. See Trial Court Opinion, 9/26/16, at 2. During that time, all downloads of child pornography ceased, and did not resume until the day

Appellant returned home from Norristown, Pennsylvania. See N.T. Trial, 2/17/15 (Volume I), at 181-182. Notably, this is true even though David Cross admitted that he was in the house and had access to the computer during Appellant's absence. See id. at 423. In light of these facts, it is clear that the jury made a factual determination of who actually downloaded the child pornography. A narrower definition of "possession" was unnecessary in this case.

Finally, in his third issue, Appellant's asserts that trial counsel's closing argument was ineffective because he failed to explain the legal definition of "possession." See Appellant's Brief at 32. This failure, per Appellant, "contributed to the jurors' evident failure to understand the law of possession" and, in turn, "caused the jury to erroneously find that [Appellant] possessed the pornography." Id. We disagree.

The right to effective assistance of counsel extends to closing arguments. Commonwealth v. Bryant, 855 A.2d 726, 742 (2004), quoting Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003). However, the "selection of arguments" by counsel is recognized as a "core exercise of . . . discretion." Yarborough, 540 U.S. at 7. As such, an appellate court's review of a defense counsel's summation is highly deferential:

> [C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact," but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed,

it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential.

Id. at 5–6 (citations omitted) (emphasis added). In recognition of the deference due to counsel, this Court previously explained that counsel need not discuss every legal definition or "legal questions relevant to the case being tried in his summation." Commonwealth v. Crawford, 427 A.2d 166, 181 (Pa. Super. 1981). Instead, counsel may decide, as a matter of strategy, how to "marshal[] the evidence and [how] to present it, along with the permissible inferences arising therefrom, to the jury in the best possible light on behalf of his client." Id.

A review of trial counsel's closing argument in its entirely demonstrates that counsel adequately discussed the requirement that the jury be fair and impartial, the credibility of the witnesses, the deficiencies and weaknesses in the Commonwealth's evidence, and the defense's theory of the case. To that end, trial counsel, after attacking the credibility of the Commonwealth's key witnesses, made a "little demonstration." N.T. Trial, 2/17/15 (Volume I), at 467. In this demonstration, trial counsel left a computer open and exited the court room. Then, he returned to the courtroom and stated,

> "I don't know what happened to that computer when I went [out of the courtroom]. I am not responsible for anything that was put on it or downloaded or uploaded on it when I wasn't around it. Neither is Shane."

Id. Through this illustration, trial counsel implicitly conveyed to the jury the defense's proposed definition of the term "possession." Furthermore, in his

remarks shortly thereafter, he pointed to the fact that the defense presented five witnesses, all of which pointed to David Cross as the individual responsible for downloading the child pornography. Id. at 467-471. Thus, counsel effectively conveyed the defense's theory of the case in his closing argument. The mere fact that he did not explicitly define the term "possession" does not render counsel's closing ineffective. For the forgoing reasons, we affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2019